**UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**EDUARDO R. RAMOS and**
**GINA M. RAMOS (f/k/a GINA LUCA),**
Debtors

Chapter 7
Case No. 10-16891-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**EDDIE STEWART,**
Plaintiff
v.
**GINA M. RAMOS,**
Defendant

Adv. P. No. 10-1316

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the court is the Defendant's Motion to Dismiss Complaint to Determine Dischargeability of Debt. The Plaintiff, Eddie Stewart (the "Plaintiff" or "Stewart"), filed an Opposition to the Motion. The Court heard the matter on February 16, 2011 and took it under advisement pending receipt of a transcript of a hearing held in the United States District Court for the District of Massachusetts. The issues presented include whether the claim advanced by the Plaintiff is barred by the doctrines of res
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

judicata or collateral estoppel, and whether the provisions of the Workers' Compensation Act, *see* Mass. Gen. Laws ch. 152, § 24, bar the Plaintiff's claim against the Defendant.

**II. BACKGROUND**

Gina Ramos (the "Defendant" or the "Debtor") and her spouse, Eduardo R. Ramos, filed a voluntary Chapter 7 petition on June 24, 2010. The Defendant filed a Motion to Amend Schedule F-Creditors Holding Unsecured Nonpriority Claims on September 2, 2010, in which she added the Plaintiff as the holder of a contingent, unliquidated, disputed claim. Immediately thereafter, the Clerk issued a "Notice to Added Creditors" advising the Plaintiff that the deadline for him to file a complaint under 11 U.S.C. §§ 523 and 727 was November 2, 2010.

On October 29, 2010, the Plaintiff filed, in the main case, "Creditor Eddie Stewart's Objection to Discharge of Debt" in which he stated that "the debt owed to him is for willful and malicious injury by the debtor." On November 1, 2010, this Court, treating the Plaintiff's Objection as a Motion to Extend the Deadline to File a Complaint under 11 U.S.C. § 523(a)(6), extended the time for him to commence an adversary proceeding to November 8, 2010. On that date, the Plaintiff timely commenced the above-referenced adversary proceeding against the Debtor.

In his complaint, the Plaintiff alleged the following facts which are paraphrased below.

Stewart began employment at the Melrose-Wakefield Hospital (the "Hospital")[1] in 1999 as a radiology technician. In November 2005, the Debtor was hired by the Hospital as a radiology technologist and eventually became an evening supervisor. On or about June 25, 2007, the Debtor spoke to the Human Resources Director at the Hospital, Madeleine Hoffman ("Hoffman"), at a time when she knew that Hoffman was investigating Stewart for possible disciplinary action. At that time, the Debtor falsely reported an alleged encounter with Stewart. Specifically, the Debtor told Hoffman that in November 2006, Stewart asked her for a hug. According to Stewart, the Debtor reported to Hoffman that he then placed his hands on her rear end, and said "nice butt, you must be working out at the gym." The Debtor also told Hoffman during the meeting that another unidentified co-worker had told Stewart that he was "too touchy."

According to the Plaintiff, the above statements made by the Debtor were knowingly false and contributed to his job loss just days later. The Plaintiff alleged that the Debtor's statements caused injury to his reputation as well as embarrassment and humiliation, both personal and professional, resulting in severe emotional distress and economic loss as a result of the Debtor's actions.

The Plaintiff further alleged that a lawsuit is pending in Middlesex Superior Court, Department of the Trial Court, with claims of defamation and intentional infliction of emotional distress, although those proceedings are stayed pending the outcome of the

[1] The Debtor identified that Hospital as Hallmark Health Systems at Melrose-Wakefield Hospital.

adversary proceeding. Based upon those allegations, the Plaintiff formulated a single count to the effect that a debt, in an unspecified sum, arose as a result of willful and malicious injury caused by the Debtor.

**III. THE DEBTOR'S MOTION TO DISMISS**

The Debtor, in her Motion to Dismiss, stated that in June 2007 she learned that the Hospital was investigating Stewart for inappropriate conduct toward a female employee. She described Stewart as one of her former coworkers. She did not state that she was Stewart's supervisor, although she was a supervisor. Concerned by what she perceived to be a pattern of inappropriate conduct, she admitted that she told Hoffman that Stewart had engaged in inappropriate conduct and that other female co-workers had complained about Stewart.

The Debtor averred in her Motion that, on November 13, 2009, Stewart filed a lawsuit in the United States District Court for the District of Massachusetts against the Hospital and Hoffman in which he alleged race discrimination, retaliation, defamation and intentional infliction of emotional distress (the "First Action"). He did not name Ramos as a defendant in the First Action, but Stewart referred to Ramos and alleged that her actions were a contributing factor in his termination. According to Ramos, the District Court dismissed Stewart's claims for defamation and emotional distress based upon a failure to state a claim upon which relief may be granted. Less than one week later, Stewart commenced a lawsuit against Ramos in the Middlesex Superior Court (the "Second Action") in which he asserted claims for intentional infliction of emotional distress and

defamation. Ramos attached a copy of the complaint filed by Stewart against the Hospital and Hoffman in the United States District Court for the District of Massachusetts to her Motion to Dismiss. In the First Action, Stewart asserted that the District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331[2] and 1343, and pursuant to its pendent jurisdiction to adjudicate claims arising under state law. He averred that he received only positive performance evaluations, although he admitted that over the course of his last four years of employment he was "subject to three complaints for relatively minor infractions which were blown out of proportion by the Hospital." He also admitted that "the general theme of the complaints was an allegation of inappropriate or overly familiar conversation and/or physical contact." In his complaint he noted that "[d]uring her investigation of the Milner complaint, Ms. Hoffman received word from a third party that a woman named Gina Luca had an issue with the Plaintiff about a year earlier" and that "[t]his onetime incident, which was never reported, supposedly involved inappropriate touching."

Stewart averred that the Hospital's racial stereotyping and its ideas about how black men and white women should interact resulted in his unjust termination and was in stark contrast to the lenient treatment afforded white employees with far greater infractions. Stewart also averred that at the time of his termination he was the only black radiology technician at the Hospital and that none of the complaining witnesses were his

[2] Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1343 concerns the district court's original jurisdiction over civil rights actions.

subordinates.

In his complaint, Stewart alleged that he complied with all statutory prerequisites by timely filing a complaint with the Massachusetts Commission Against Discrimination and by obtaining a right-to-sue letter from the EEOC on November 9, 2009. Based on his allegations, the Plaintiff formulated four counts against the Hospital and Hoffman, including violations of 42 U.S.C. § 2000e-2 and Mass. Gen. Laws ch. 151B, § 4, relating to disparate treatment (Count I); violations of 42 U.S.C. § 2000e-3 and Mass. Gen. Laws ch. 151B, § 4, relating to retaliation (Count II); intentional infliction of emotional distress (Count III); and defamation (Count IV).

The Hospital and Hoffman moved to dismiss both the defamation count and the intentional infliction of emotional distress count for failure to state claims upon which relief may be granted. On April 29, 2010, the District Court dismissed the defamation claims, despite Stewart's contention that ''[t]he defamatory statements at issue were those made by the women who filed complaints against [Stewart]. . . ." With respect to the count for intentional infliction of emotional distress, the court determined that Stewart's conclusory recitation of the requisite element of a cause of action for emotional distress was insufficient and that the Workers' Compensation Act preempted the emotional distress claims against an employer and supervisor.[3]

[3] The District Court stated: "As far as I am concerned, the question of retaliation was not fully developed before the MCAD, the intentional infliction of emotional distress just does not make it, and the defamation is just inadequately pled in terms of specificity." Referring to Count I, it added: "So, we are down to the core case here."

On May 4, 2010, Stewart filed the Second Action. The facts set forth in that complaint are virtually identical to the facts set forth in the instant adversary proceeding.

**IV. POSITIONS OF THE PARTIES**

The Debtor, citing Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 16 (1st Cir. 2003), asserts that the affirmative defenses of res judicata and collateral estoppel may be adjudicated on a Rule 12(b)(6) motion. She argues that the requisite elements for application of res judicata or collateral estoppel are present in this proceeding and that, in any event, the Workers' Compensation Act preempts an intentional infliction of emotional distress claim raised by an employee against an employer corporation or a supervisor if the supervisor "acted in the course of employment."

The Plaintiff argues that his complaint under 11 U.S.C. § 523(a)(6) is not barred by res judicata because he did not and could not bring his claims against the Debtor in the United States District Court for the District of Massachusetts due to the absence of jurisdiction, stating "[a] state law tort claim cannot be maintained in federal court, between citizens of the same state, where there are no federal claims against the same Defendant." He also maintains that "[t]he Defendant's involvement in the federal suit was remote and the case was dismissed for reasons wholly unrelated to whether or not the Defendant had, in fact, defamed the Plaintiff."

Stewart also argues that the Debtor's claim of privity with the Hospital fails, thereby defeating her collateral estoppel defense. He adds that his former employer, the Hospital

in this case, could not be liable for the intentional torts committed by an employee, even if the employee is acting within the scope of employment, unless the employer authorized and directed the tortious conduct.

**V. DISCUSSION**

A. Standard for Dismissal

In Sunshine Three Real Estate Corp. v. Housman (In re Sunshine Three Real Estate Corp.), 426 B.R. 6 (Bankr. D. Mass. 2010), this Court observed:

> A motion to dismiss under Rule 12(b)(6) must be granted unless the complaint contains sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" Cunningham v. Nat'l City Bank, 588 F.3d 49, 52 (1st Cir.2009) (citing Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), and quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Sunshine Three Real Estate Corp., 426 B.R. at 17. Moreover, if matters outside the pleadings are presented to, and not excluded by the Court, the Court must treat the motion to dismiss as a motion for summary judgment. The Defendant attached numerous documents to her Motion to Dismiss, without objection from the Plaintiff. Accordingly, the Court shall treat the Motion to Dismiss as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), made applicable to this proceeding by Fed. R. Bankr. P. 7012.

B. The Doctrine of Res Judicata

In In re Colonial Mortgage Bankers Corp., 324 F.3d 12 (1st Cir. 2003), the United States Court of Appeals for the First Circuit set forth the applicable law governing the doctrine of res judicata or claim preclusion. It stated:

> Federal law determines whether an earlier judgment, rendered in a federal court, bars the maintenance of a subsequent federal court action. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 37 (1st Cir.1998). Under federal law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Thus, the elements of a res judicata defense are (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions. Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir.1994).

Colonial Mortgage, 324 F.3d at 16. *See also* Kale v. Combined Ins. Co. of Amer., 924 F.2d 1161, 1165 (1st Cir. 1991), *cert. denied,* 502 U.S. 816 (1991); In re Sunshine Three Real Estate Corp., 426 B.R. at 20 (citing, *inter alia,* Schwartz v. Schwartz (In re Schwartz ), 409 B.R. 240, 249 (B.A.P. 1st Cir. 2008)).

Although the Defendant argues that res judicata applies to bar the Plaintiff's claim, the Court finds that it does not. While the Defendant arguably established an identity of the cause of action for intentional infliction of emotional distress, she failed to satisfy the other prerequisites for application of the doctrine of res judicata.

In the first place, there has been no final judgment on the merits, and the collateral order doctrine is not implicated. "A judgment is 'any order from which an appeal lies.'" Diaz-Reyes v. Fuentes-Ortiz, 471 F.3d 299, 301 (2006) (citing Fed. R. Civ. P. 54(a)). "For an order to constitute a final judgment, there must be 'some clear and unequivocal manifestation by the [district] court of its belief that the decision made, so far as the court is concerned, is the end of the case.'" Id. (citing Goodwin v. United States, 67 F.3d 149, 151 (8th Cir.1995); *see also* United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 232, 78

S.Ct. 674, 2 L.Ed.2d 721 (1958) (holding that a pronouncement may amount to a final judgment if it "clearly evidences the judge's intention that it shall be his final act in the case")). The transcript of the hearing conducted in the Unite States District Court for the District of Massachusetts submitted by the Defendant in which the District Court announced its rulings on three of the four counts of Stewart's complaint did not evidence any intention that it was the court's final act in the case. Indeed, the district court stated: "we are down to the core case here."

Stewart's First Action was commenced on November 13, 2009 and was predicated upon a theory that racial animus and discriminatory intent was the cause of his termination as a radiology technician. He also averred that the two defendants, the Hospital and Hoffman, intentionally caused him emotional distress and defamed him. The district court dismissed all counts of Stewart's complaint against the Hospital and Hoffman less than six months after the commencement of the action, except for Count I through which Stewart set forth a claim for violation of 42 U.S.C. § 2000e-2 and Mass. Gen. Laws ch. 151B, § 4 pertaining to unlawful employment practices, including discrimination upon the basis of race, color, religion, sex or national origin. The docket report, which the Defendant attached to her Motion to Dismiss, establishes that the District Court has not entered a final judgment as to all claims. Until such time as Count I is resolved by the District Court, there is no final judgment from which either the Plaintiff or the Defendants could appeal.

The Debtor relies upon a decision of the United States Court of Appeals for the First Circuit, namely Kale v. Combined Ins. Co. of Amer., 924 F.2d 1161 (1st Cir. 1991), *cert.*

*denied,* 502 U.S. 816 (1991). The Court finds that her reliance on that decision is misplaced. In the plaintiff's first action, Kale v. Combined Ins. Co., 861 F.2d 746 (1st Cir. 1998) ("*Kale I"),* he appealed the entry of summary judgment with respect to his claim that his termination from employment violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. In the underlying action in the United States District Court for the District of Massachusetts, the plaintiff, Kale, had pled federal question jurisdiction and "adorned his ADEA complaint with pendent state-law claims for intentional infliction of emotional distress and breach of an implied covenant of good faith and fair dealing . . . ." 924 F.2d at 1163. The state-law claim for intentional infliction of emotional distress was voluntarily discontinued, and the District Court granted summary judgment on the ADEA claim and dismissed the remaining state-law claims at the same time.

The plaintiff filed a new suit against the defendant alleging numerous state-law claims. The defendant removed that action to the United States District Court for the District of Massachusetts and moved to dismiss the action based on the preclusive effect of *Kale I. See* 924 F.2d at 1164. The District Court granted the motion, *see* Kale v. Combined Ins. Co., 736 F.Supp. 1183 (D. Mass. 1990) ("*Kale II"),* ruling that the plaintiff's failure to bring the state-law claims under diversity jurisdiction in *Kale I* barred the assertion of the claims in the later proceeding. The United States Court of Appeals for the First Circuit agreed.

The First Circuit framed the issue as whether "the judgment in *Kale I* [should] be

accorded preclusive effect with respect to the claims asserted in *Kale II*, inasmuch as those claims could have been prosecuted in *Kale I* had the plaintiff elected to plead an available alternative basis for jurisdiction?" 924 F.2d at 1165 (footnote omitted). It applied the doctrine of res judicata, finding "there was a final judgment in *Kale I,* comprising an adjudication on the merits for purposes of claim preclusion." Id.

The decision in Kale v.. Combined Ins. Co. of Amer., 924 F.2d 1161 (1st Cir. 1991), is distinguishable from the instant case because the First Action remains pending in the District Court and no final judgment as entered. Additionally, the instant case is distinguishable from Kale for another reason. Kale involved claims which could have been brought against the defendant in *Kale I,* not state-law claims against a different party (Ramos), who like the Plaintiff, resides in Massachusetts. In *Kale II*, the plaintiff sued the same defendant in state court asserting additional state law claims. The First Circuit determined that the claims asserted in *Kale II* should have been advanced in *Kale I* because they "were sufficiently related, that is, if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong, . . . notwithstanding any differences in remedies sought or theories of recovery pleaded." 924 F.2d at 1166. In the instant case, Stewart is asserting a claim under 11 U.S.C. § 523(a)(6) against Ramos based upon intention infliction of emotional distress. Ramos, however, did not establish that her joinder as a party in the First Action was required. *See* Fed. R. Civ. 19(a)(1).

In the absence of a final order, the collateral order doctrine permits review of a

"limited set of district-court orders . . . short of final judgment." U.S. Fidelity and Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 54 (1st Cir. 2009) (citing Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1945(2009) (quotation marks and citation omitted). "Under the doctrine . . . , a district court order, though not yet final, may be appealed immediately if it "'finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" Id. at 54-55 (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949).

The collateral order is inapplicable. In Espinal-Dominguez v. Puerto Rico, 352 F.3d 490 (1st Cir. 2003), the United States Court of Appeals for the First Circuit observed that in order to satisfy the collateral order doctrine, a district court order must involve:

> (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is "unfinished" or "inconclusive"; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion.

Id. at 496 n.15 (quotation marks and citation omitted). The court added:

> We have referred to these four requirements as "separability, finality, urgency, and importance." Id. (quotation marks and citation omitted). Nevertheless, in the Supreme Court's most recent cases, it has formally continued to refer to Cohen's [Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)] "three" criteria, in which "importance" and "separability" appear to be considered together. *See, e.g.*, Osborn v. Haley, 549 U.S. 225, 238, 127 S.Ct. 881, 166 L.Ed.2d 819 (2007) (including, as one of the three Cohen criteria, whether "the issue decided is important and separable"); Will [v. Hallock], 546 U.S. [345] at 349, 126 S.Ct. 952 [(2006)] (discussing the "three conditions" of the doctrine, including that

> the order "resolve an important issue completely separate from the merits of the action"). In substance, there is no difference between our characterization of the collateral order doctrine and the Supreme Court's. That, of course, must be so.

Id. *See also* U.S. Fidelity and Guar. Co. v. Arch Ins. Co., 578 F.3d at 55 and n. 15. The Defendant did not reference the collateral order doctrine, and this Court finds it it is inapplicable to the counts of Stewart's complaint dismissed by the District Court on April 29, 2010.

The Court also finds that the Defendant failed to establish an identity of parties or privies in the First Action and the instant adversary proceeding. There was no evidence that the Debtor, in her capacities as an employee, radiology technician and evening supervisor, had authority to terminate Stewart, who was identified as her co-worker. Unquestionably, Hoffman, who was the Director of Human Resources, had such authority. While the Defendant may or may not have transmitted untruthful information to Hoffman, and her conduct could conceivably give rise to a claim for willful and malicious injury relating to the intentional infliction of emotional distress, she was not alleged to be Stewart's employer, and Stewart did not allege that her conduct violated federal laws that would confer jurisdiction in the United States District Court for the District of Massachusetts under 28 U.S.C. § 1331.

C. The Doctrine of Collateral Estoppel

In Silva v. Commonwealth of Massachusetts Land Court, 351 Fed. App'x. 450 (1st Cir. 2009), *cert. denied*, __ U.S. __, 129 S.Ct. 2020 (2009)), the United States Court of Appeals

for the First Circuit observed that "'Massachusetts recognizes two distinct types of preclusion arising out of the maintenance of prior litigation: res judicata (claim preclusion) and collateral estoppel (issue preclusion)." Silva, 351 Fed. App'x. at 458 (quoting Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 52 (1st Cir. 2008)). According to the First Circuit in Silva,

> [T]he Supreme Judicial Court recently stated that issue preclusion applies when (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally, [4] the issue decided in the prior adjudication must have been essential to the earlier judgment. Massachusetts courts also require that [5] appellate review must have been available in the earlier case before issue preclusion will arise.

351 Fed. App'x. at 458–59 (citations omitted).

Application of the doctrine of collateral estoppel is unwarranted for the same reasons that res judicata is inapplicable - - the absence of a final judgment on the merits and the absence of privity.

D. The Workers' Compensation Act

Citing Mass. Gen. Laws ch. 152, § 24,[4] the Defendant argues that the Workers'

---

[4] Section 24 provides:

> An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person or self-insurer, if the employee shall not have given the said notice within thirty days of the

Compensation Act preempts Stewart's claims against her under 11 U.S.C. § 523(a)(6) for intentional infliction of emotional distress. The Court rejects this argument in the context of this case. While the Workers' Compensation Act may have barred Stewart's claims against the Hospital, it does not apply to the Defendant who was not his employer or direct supervisor and who has been alleged to have engaged in conduct that would be outside the scope of her duties. In view of the absence of any evidence that the Defendant was authorized as an evening supervisor and an agent of the Hospital to terminate Stewart as an employee, or was acting in the course of her employment when she allegedly falsely reported an incident of improper conduct, this Court cannot find that Stewart's cause of action is preempted. As Stewart correctly notes, an employer is not liable for the

---

> time said employer became an insured person or self-insurer. An employee who has given notice to his employer that he claimed his right of action as aforesaid may waive such claim by a written notice, which shall take effect five days after it is delivered to the employer or his agent. The notices required by this section shall be given in such manner as the department may approve. If an employee has not given notice to his employer that he preserves his right of action at common law as provided by this section, the employee's spouse, children, parents and any other member of the employee's family or next of kin who is wholly or partly dependent upon the earnings of such employee at the time of injury or death, shall also be held to have waived any right created by statute, at common law, or under the law of any other jurisdiction against such employer, including, but not limited to claims for damages due to emotional distress, loss of consortium, parental guidance, companionship or the like, when such loss is a result of any injury to the employee that is compensable under this chapter.

Mass. Gen. Laws ch. 152, § 24.

intentional torts of its employees. *See* Morehouse v. Berkshire Gas Co., 989 F.Supp. 54 (D. Mass. 1997). While the Defendant, in her capacity as a supervisor, would have had an interest in protecting employees from inappropriate conduct on the part of Stewart, if her allegations were untruthful and advanced willfully and maliciously, Stewart's suit against her should not be dismissed at this time.

In Foley v. Proctor & Gamble Distributing Co., 2003 WL 21696544 (D. Mass. 2003), the district court explained:

> The Workers' Compensation Act provides an "exclusive remedy against coemployees who engage in tortious conduct within the course of their employment and in furtherance of the employer's interest." Brown v. Nutter, McClennen & Fish, 696 N.E.2d 953, 956 (Mass. App. Ct. 1998). "Common law actions are barred [by the Workers' Compensation Act] only where: the plaintiff is shown to be an employee; his condition is shown to be a 'personal injury' within the meaning of the compensation act; and the injury is shown to have arisen 'out of and in the course of . . . employment."' Foley v. Polaroid Corp., 413 N.E.2d 711, 714 (Mass. 1980) ( quoting G.L. c. 152, § 26); Green v. Wyman-Gordon Co., 664 N.E.2d 808, 813 (Mass. 1996). Intentional torts which are "in no way within the scope of employment furthering the interests of the employer" are not barred by the Act because they are not an accepted risk of doing business. O'Connell v. Chasdi, 511 N.E.2d 349, 351-52 (Mass. 1987); Morehouse v. Berkshire Gas Co., 989 F.Supp. 54, 65 (D. Mass. 1997) (because a claim for intentional infliction of emotional distress stemming from sexual harassment is not related to the employers interest, it is not barred). *But see* Green v. Wyman-Gordon Co., 664 N.E.2d 808, 814 (Mass. 1996) (finding that plaintiff's intentional infliction of emotional distress claim stemming from on-the-job sexual harassment is barred by the Workers' Compensation Act).

Foley v. Proctor & Gamble Distributing Co., 2003 WL 21696544 at *4.

In the instant case, if, as Stewart has alleged, the Defendant falsely reported misconduct on his part, she would not be acting in the Hospital's interest. Accordingly, his

claim against her would not be barred by the Workers' Compensation Act.

**VI. CONCLUSION**

In view of the foregoing, the Court shall enter an order denying the Defendant's Motion to Dismiss Complaint to Determine Dischargeability of Debt.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 29, 2011